Dwayne Mesiah ALLEN, Appellant,

v.

The STATE of Texas, State.

No. 2–04–358–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 17, 2006.

William H. 'Bill' Ray, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, Chief, Appellate Division, Edward L. Wilkinson, Michael Parrish and Jennifer Tourje, Asst. Dist. Attys. for Tarrant County, Fort Worth, for state.

Panel A: LIVINGSTON, HOLMAN, and GARDNER, JJ.

## OPINION ON MOTION FOR REHEARING

ANNE GARDNER, Justice.

We deny Appellant's motion for rehearing. We withdraw our opinion and judgment of June 15, 2006, and substitute the following.

## Introduction

Appellant Dwayne Mesiah Allen appeals from his conviction for murder. In two points, Appellant argues that the trial court erred by allowing the State to introduce undisclosed extraneous-offense evidence and by refusing to grant a mistrial after a State's witness interjected hearsay despite the trial court's instruction not to do so. We affirm.

## Background

Appellant does not challenge the legal or factual sufficiency of the evidence. We will, therefore, limit our review of the evidence to that necessary to put Appellant's points into context.

Kisha Kennard was shot dead in the kitchen of her family home on September 24, 2001. Her eleven-year-old son witnessed the shooting and later identified Appellant—whom he had known for years—as the shooter. Hours before the murder, Appellant had cut Kennard with a knife and threatened to kill her.

Police obtained a warrant and attempted to arrest Appellant the next morning at the home he shared with his mother. His mother reported that he had not returned home the night of the shooting. Nor did Appellant ever return to his job.

Also on September 25, in an attempt to determine Appellant's whereabouts, Arlington Police Detective Jerome Albritton and Kennard's sister obtained several phone numbers from Kennard's caller I.D. device. The sister identified one of the numbers as that of a cell phone belonging to Appellant. Albritton called the number. A man answered but hung up when Albritton identified himself as a police officer.

Albritton determined that the cell phone number was registered to a cell phone account owned by Corie Mills. When he contacted Mills—who did not know Appel-

lant, Kennard, or other persons involved in the case—Mills told him that her purse containing her cell phone and credit cards had been stolen on September 25. Mills called her own cell phone number several hours after her purse was stolen. A man answered the phone, said that he was in Houston, told Mills that he had purchased the phone on the street, and offered to sell it back to her.

At trial, Houston resident Dante Leonard testified that on the evening of September 25, he was approached by a man unknown to him who offered to sell a cell phone to him for $20. Leonard bought the phone, but declined to buy the purse the man also offered to him. Leonard testified that the man had a handgun in his car.

Police later traced Appellant to Louisiana and then to Virginia, where he was arrested. He was tried and convicted of Kennard's murder, and the trial court sentenced him to sixty years' confinement. This appeal followed.

### Discussion

#### 1. Extraneous-offense evidence

 In his first point, Appellant argues that the trial court erred by allowing the State to introduce extraneous-offense evidence—evidence relating to the theft of Corie Mills's purse and cell phone and Leonard's testimony that the man from whom he bought the phone had a handgun in his car—because the State failed to give notice under rule 404(b) of its intent to offer the evidence. *See* Tex.R. Evid. 404(b).

Rule 404(b) provides,

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

*Id.* "Rule 404(b) literally conditions admissibility of other-crimes evidence on the State's compliance with the notice provisions of Rule 404(b)." *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex.Crim.App.2005). To constitute an extraneous offense, the evidence must show that a crime or bad act was committed and that the defendant was connected to it. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App.), *cert. denied*, 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993).

The purpose of rule 404(b)'s notice requirement is to prevent surprise to the defendant and apprise him of the offenses the State plans to introduce at trial. *Hernandez*, 176 S.W.3d at 823; *Hayden v. State*, 66 S.W.3d 269, 272 (Tex.Crim.App. 2001); *Cole v. State*, 987 S.W.2d 893, 897 (Tex.App.-Fort Worth 1998, pet. ref'd). The rule requires "reasonable" notice. *Hayden*, 66 S.W.3d at 272. An "open file" policy, by itself, is not sufficient to comply with the rule's notice requirement. *Buchanan v. State*, 911 S.W.2d 11, 15 (Tex. Crim.App.1995). We review the admission of rule 404(b) evidence under the abuse of discretion standard. *See Hayden*, 66 S.W.3d at 270.

In *Buchanan*, the trial court admitted evidence of an extraneous offense that the State had not disclosed in response to the defendant's rule 404(b) request. *Id.* at 14–15. The State argued that the defense had actual notice of the extraneous offense because it was reflected in an offense report in the State's file, the State had an open file policy, and the defendant's attorney

had reviewed the State's file on several occasions. *Id.* at 15. The court of criminal appeals held that the trial court abused its discretion by admitting the evidence because "the mere opening of [the State's] file containing an offense report detailing extraneous evidence" does not satisfy the rule 404(b) requirement of giving notice of "intent to introduce" such evidence. *Id.*

In *Hayden,* the State gave a witness statement to the defendant on the heels of the defendant's rule 404(b) request. *Hayden,* 66 S.W.3d at 269. The witness statement described extraneous offenses. *Id.* at 269–70. Noting that "the State has done more than simply say, 'Look in our file and see what you can find,'" the court of criminal appeals held that the trial court did not abuse its discretion by concluding that delivery of the witness statement to the defense provided the defense with reasonable notice under rule 404(b). *Id.* at 273. The court distinguished the facts of *Hayden* from those of *Buchanan:* "It is the fact of delivery, not the content of the statement, that gave the defense notice here but not in *Buchanan.*" *Id.,* n. 15. The court went on to state,

> While the State should not be permitted to engage in gamesmanship by finding creative ways to convey "notice" without really informing the defense of its intent to introduce extraneous offenses, the defense should not be permitted to engage in gamesmanship by claiming the notice it received was insufficient when the defense did in fact have actual notice of the State's intent to introduce the extraneous offense in question.... What is in the record [in this case] tends to support the conclusion that the defense did indeed have actual notice of the State's intent to introduce the extraneous offenses, and hence, the trial court's deci-

sion to admit the evidence is supported by the record and must be upheld. *Id.,* n. 16.

The procedural facts in this case fall somewhere between those of *Buchanan* and *Hayden.* Here, Appellant made a timely rule 404(b) request. Prior to trial, the State served two notices of intent to offer evidence of other crimes. The notices recited in detail a total of sixteen extraneous offenses, but neither notice mentioned the theft of Mills's purse or cell phone or the handgun in the car. Both notices stated that the "State intends to introduce each and every extraneous offense ... identified in ... [the] offense reports ... in the State's file" and affirmed "that the State's file shall remain accessible to defense counsel through the District Attorney's continuing open file policy." The record reflects that the State's file contained an offense report written by Detective Albritton describing the theft of the purse and cell phone and the handgun in the car of the man who sold the cell phone to Leonard. At trial, Appellant objected to evidence of the purse and cell phone theft and the handgun. Appellant's counsel stated, "We're on actual notice that [Detective Albritton's] report exists. We are not on actual notice of [the State's] intent to introduce those offenses[.]" Over Appellant's objection that the State had not complied with rule 404(b), the trial court allowed the State to put on evidence concerning the theft of the purse, the use of the cell phone, and the handgun in the car.

Based on the procedural history presented by this case, we hold that the trial court abused its discretion by admitting the purse, cell phone, and handgun evidence over Appellant's rule 404(b) objection. Appellant's counsel denied having actual notice of the State's intent to introduce those offenses. The State did not list

the theft of the purse in its detailed recitation of sixteen other extraneous offenses it intended to introduce at trial. Under these circumstances, the State's boilerplate statement that it intended to introduce all extraneous offenses reflected in its open file was nothing more than an invitation to "look in our file and see what you can find" and the sort of gamesmanship disapproved by *Hayden*. Unlike *Hayden*, the record in this case compels the conclusion that the defense did not have actual notice of the State's intent to introduce the extraneous offenses. Therefore, the trial court abused its discretion by admitting the extraneous-offense evidence over Appellant's objection.

█ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex.R.App. P. 44.2. The court of criminal appeals recently addressed the standard for assessing harm in the context of rule 404(b) in *Hernandez*, 176 S.W.3d at 824–26. We apply the rule 44.2(b) harm standard: evidence erroneously admitted under rule 404(b) is harmful if it had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* at 824 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997)). If the rule 404(b) evidence was "substantively inadmissible" and substantially influenced the jury's verdict, then the influence on the jury's verdict will always be injurious. *Hernandez*, 176 S.W.3d at 825. But if the evidence was "substantively admissible" and substantially influenced the jury's verdict, "it cannot be said that this ... influence was 'injurious' if the defendant was not surprised by the evidence." *Id.*

█ Thus, when erroneously admitted rule 404(b) evidence is substantively admissible, the error is harmless unless (1) it substantially influenced the jury's verdict and (2) the defendant was surprised by the evidence. *See id.* In determining whether evidence had a substantial influence on the verdict, we review the record as a whole. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). A defendant may demonstrate surprise by showing how his defense strategy might have been different had the State explicitly notified him that it intended to offer the extraneous-offense evidence. *Hernandez*, 176 S.W.3d at 826.

In this case, we hold that the evidence concerning the handgun and the theft of the purse and cell phone was substantively admissible; that is, it was admissible but for the State's failure to provide notice to Appellant under rule 404(b). *See Alba v. State*, 905 S.W.2d 581, 586 (Tex.Crim.App. 1995), *cert. denied*, 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996) (holding extraneous offense related to defendant's flight admissible under rule 404(b)). Moreover, Appellant made no objection to the admission of the evidence other than his rule 404(b) objection.

We now review the entire record to determine whether the erroneously admitted evidence had a substantial influence on the jury's verdict. The evidence shows that Appellant cut Kennard with a knife and threatened to kill her a few hours before the shooting. Kennard's son, DJ, was standing beside his mother in the kitchen of their home and saw Appellant draw a gun and repeatedly shoot Kennard.[1] Appellant fled north Texas after the shooting and never returned to his

---

1. In his motion for rehearing, Appellant argues that DJ could not have seen the shooter because the blinds were closed. But the record reflects that DJ demonstrated and described to the jury several times how he looked through the blinds and identified Appellant.

home or his job. Police found his abandoned car in Lake Charles, Louisiana and ultimately arrested him in Virginia. Appellant offered evidence that another man had threatened to kill Kennard on several occasions in the past, but the man's employer testified that he was at work on the night of the shooting until he received a call notifying him that Kennard had been shot.

Appellant argues that evidence of the theft of the purse and the use and sale of the cell phone in Houston established flight, which, argues Appellant, was a material part of the State's case. While this evidence may have reinforced the State's proof that Appellant fled after the shooting, it is insignificant compared to the evidence that Appellant never returned to his home or his job, abandoned his car in Louisiana, and was apprehended in Virginia.

We conclude that, in the context of the entire case against Appellant, the trial court's error in admitting the extraneous-offense evidence relating to the purse, cell phone, and handgun did not have a substantial influence on the jury's verdict. *See Hernandez*, 176 S.W.3d at 824–25. The evidence that Appellant murdered Kennard is overwhelming to the extent that it dwarfs the extraneous-offense evidence and renders it insignificant. Because the evidence did not have a substantial influence on the verdict, we do not reach the question of whether Appellant was surprised by the evidence. We hold that the trial court's error in admitting the extraneous-offense evidence did not affect a substantial right. *See id.* Thus, we disregard the error as harmless and overrule Appellant's first point. *See* Tex. R.App. P. 44.2(b).

### 2. Failure to grant a mistrial

██ In his second point, Appellant argues that the trial court erred by failing to grant a mistrial when Detective Albritton stated that the man who answered Corie Mills's cell phone identified himself as "Dwayne" immediately after the trial court instructed Detective Albritton not to do so.

██ We review the trial court's denial of the motion for a mistrial under an abuse of discretion standard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). When objectionable testimony is elicited, inadvertently or deliberately, an appellate court presumes the jury will follow instructions to disregard the evidence. *Id.* It is well settled that testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Ladd*, 3 S.W.3d at 567.

Detective Albritton testified that he retrieved several numbers from Kennard's caller ID device. Kennard's sister told Albritton that one of the numbers was for Appellant's cell phone. Albritton testified that he called the number and someone answered.

At this point, Appellant made a hearsay objection to anything said by the person who answered the phone. Outside the presence of the jury, the following colloquy took place:

THE COURT: Ask him. Let's see what his answer is.

. . . .

[By the prosecutor]

Q. What does the person on the other end say?

A. Whoever was on the other end of the phone hung up immediately.

Q. Okay. Did the other person on the other end of the phone say his name, say, this is Dwayne?

A. He said Dwayne earlier, but then after I identified myself, he hung the phone up.

Q. Okay.

[PROSECUTOR]: That's it.

THE COURT: Well, I'll let him answer that question that he hung the phone up.

The jury returned to the courtroom and the State continued to examine Detective Albritton:

Q. Let's try that again, please. When you called this number, what happened?

A. After I called the number, I identified myself as Detective Albritton, Arlington police, and I asked for Dwayne.

Q. And?

A. He said, this is Dwayne—.

Appellant objected and asked the trial court to instruct the jury to disregard. The trial court sustained the objection and instructed the jury to disregard the question and answer. Appellant then requested a mistrial, and the trial court overruled his request.

We agree with Appellant's argument that Detective Albritton's testimony that the man who answered the phone said, "This is Dwayne," implies that Appellant answered the phone and, therefore, that Appellant stole the phone. But we cannot say that this evidence was so clearly calcu-

lated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind with an instruction to disregard. Detective Albritton had just testified, without objection, that Kennard's sister had identified the telephone number as belonging to Appellant's cell phone. Thus, there was already evidence before the jury tying Appellant to the stolen phone. Moreover, compared with the evidence that Appellant murdered Kennard as we recounted in connection with Appellant's first point, the theft of the purse and cell phone is trivial, not damning. Under the circumstances presented here, we hold that the trial court did not abuse its discretion by denying Appellant's request for a mistrial. We therefore overrule Appellant's second point.

## Conclusion

Having overruled both of Appellant's points, we affirm the judgment of the trial court.

LIVINGSTON, J. filed a concurring opinion.

TERRIE LIVINGSTON, Justice concurring.

I write separately only to disagree with the majority opinion's analysis on the admissibility of the one statement identifying the person answering the cell phone as "Dwayne." As the majority notes above, Appellant made a hearsay objection when the State began to question Detective Albritton about who answered the call when Albritton placed a call to a number Kennard's sister had identified as belonging to Appellant.

When Appellant made his hearsay objection, the trial court removed the jury and had the State proceed without its presence to see what the witness would say. Albrit-

ton said he would testify that whoever answered the phone identified himself as "Dwayne" originally but that when Albritton identified himself and called back, the individual merely hung up. The trial court's instructions indicated to the State that it would allow the State to ask Albritton what happened when he called back and that the person hung up once Albritton identified himself, but not to go into the person's statement, "This is Dwayne."

Despite this instruction, Albritton still disclosed that someone answering the stolen cell phone had said, "This is Dwayne." Appellant again objected and asked the trial court for an instruction to the jury. The trial court sustained the objection and instructed the jury to disregard both the State's question and Albritton's answer, but it denied Appellant's request for a mistrial.

Unlike the majority, I do not believe the statement was hearsay, which was Appellant's objection. The rules of evidence state that hearsay is a statement made for the purpose of the truth of the matter asserted. TEX.R. EVID. 801(d). Here, the State contends and I would agree that the statement, "This is Dwayne," was not offered by the State to prove that Appellant had stolen any cell phone; rather, it was offered to show how Albritton's investigation was proceeding regarding the various phone numbers on the victim's caller identification. It was not offered to show that Appellant had stolen the cell phone; the jury already knew that. *See Head v. State,* 4 S.W.3d 258, 259 (Tex.Crim.App.1999); *Enriquez v. State,* 56 S.W.3d 596, 600 (Tex.App.-Corpus Christi 2001, pet. ref'd). Thus, I would hold that the statement was not hearsay and that the objection should not have been sustained, making the instruction to disregard unnecessary, as well as any mistrial.

While the result would remain the same under my analysis or the majority's, I respectfully concur based upon the foregoing.